Griselda **GUADARRAMA–GARCIA, on behalf of herself and as the biological parent of Aldo Guadarrama, an infant; Patricia Skafi and Isa N. ("Nick") Skafi, on behalf of themselves and the infant child, Aldo Guadarrama, Plaintiffs,**

v.

**Hippolito ACOSTA, acting District Director of the Immigration and Naturalization Service, Houston; James Ziglar, Commissioner of the Immigration and Naturalization Service; and John Ashcroft, Attorney General of the United States, Defendants.**

**Civil Action No. H–02–3020.**

United States District Court,
S.D. Texas,
Houston Division.

Aug. 29, 2002.

Peter D. Williamson, Williamson & Chaves, Houston, TX, for Griselda Guadarrama–Garcia.

John C. Pavlas, John C. Pavlas & Associates, Houston, TX, for Patricia and Isa N. Skafi.

Rosemary Garza, Attorney at Law, Houston, TX, ad litem, for Aldo Guadarrama.

Helen Quintero, Attorney at Law, Houston, TX, ad litem, for unknown father.

Howard E. Rose, Office of the United States Attorney, Southern District of Texas, Houston, TX, for the government.

Gabriel Ferrer, Cónsul de México, Consulado General de México, Houston, TX, representative of the Consulate General of Mexico.

## ORDER

HITTNER, District Judge.

Pending before the Court are Plaintiffs' motion for a preliminary injunction and Plaintiffs' request for this Court to enforce the 309th Family District Court's August 26, 2002 order for the United States Immigration and Naturalization Service to release Aldo Guadarrama a/k/a Fabian Guadarrama to the custody of Isa N. Skafi and Patricia Skafi. Having considered the motions, submissions, arguments of all counsel at the August 27, 2002 hearing, and applicable law, the Court determines that Plaintiffs' motion for preliminary injunction is moot and that Plaintiffs' request should be denied.

Plaintiff Griselda Guadarrama–Garcia ("Guadarrama") is the biological mother of Aldo Guadarrama, a/k/a Fabian Guadarrama ("Aldo"), born December 19, 2001. Guadarrama and her son are Mexican nationals. Plaintiffs Patricia and Isa N. ("Nick") Skafi (hereinafter "Mr. and Mrs. Skafi") are citizens of the United States who wish to adopt Aldo Guadarrama. Several months ago, Mr. Skafi traveled to Mexico to commence plans for an adoption, including appropriate proceedings in Mexico. Sometime thereafter, he made arrangements for a third party to bring Aldo into the United States illegally. Ms. Guadarrama entered the United States illegally on June 16, 2002—the same day but separately from her son. Upon entry, she was detained in INS custody and placed in removal proceedings.[1] As a result of his participation in these events, Mr. Skafi was charged with the federal criminal offense of harboring or attempting to harbor an illegal alien (the child) in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and (iv).

Subsequent to Guadarrama's and Aldo's entry into the United States, Mr. and Mrs.

---

1. Guadarrama continues to be in INS custody as of the publication of this Order.

Skafi instituted adoption proceedings in the 309th Family District Court of Harris County, Texas. In conjunction with that proceeding, Guadarrama executed an affidavit of relinquishment of parental rights, which was filed with the state court. Prior to commencement of the instant federal suit, Texas District Judge Frank Rynd of the 309th Family District Court had scheduled a hearing regarding temporary conservatorship for September 3, 2002.

In removal proceedings in Immigration Court on August 9, 2002 with Guadarrama present, an immigration judge granted Guadarrama's application for voluntary departure until September 6, 2002 in order to enable her to attend the state family court hearing on September 3, 2002. The order provided for voluntary departure with safeguards: the immigration judge noted in the record that Guadarrama would not be allowed to leave the custody of the INS during the voluntary departure period. Initially, this Court was informed that Hippolito Acosta, Acting District Director of the Immigration and Naturalization Service, overruled the order of the immigration judge and scheduled Guadarrama and Aldo for departure from the United States on August 12, 2002. The Court has since received conflicting information in Defendants' briefing to the Court that the Mexican consulate, after an interview with Guadarrama and at her request, asked the INS to make travel arrangements for Guadarrama and Aldo to return to Mexico in conjunction with the voluntary departure order.[2]

On the morning of August 12, 2002, the Court conducted a hearing on Plaintiffs' Emergency Motion for Temporary Restraining Order, Temporary Injunction, and Other Relief. Guadarrama and Aldo were scheduled to be placed on a commercial flight to Mexico that same day at 12:00 p.m. An official from the Mexican consulate was to accompany Guadarrama and Aldo on the flight. Guadarrama was not present at the hearing. The Court granted Plaintiffs' application for an emergency temporary restraining order and enjoined the INS or the Attorney General's office from removing Guadarrama and Aldo from the United States pending further hearing on the matter. The Court also stayed the immigration judge's order that contained voluntary departure under safeguards for both mother and child. Guadarrama and Aldo remained in INS custody in the interim.

Meanwhile, the 309th Family District Court rescheduled the September 3, 2002 conservatorship hearing for August 26, 2002. After a hearing on the matter and consideration of Guadarrama's voluntary relinquishment of her parental rights, Judge Rynd appointed Mr. and Mrs. Skafi as temporary sole managing conservators of Aldo. Attorney Isaias Torres entered an appearance on Guadarrama's behalf. Aldo was represented by a guardian ad litem. The state court's order included the following conditions for turnover of Aldo:

> IT IS HEREBY ORDERED that the United States Immigration and Naturalization Service and/or Catholic Charities or such other child placement agency or any individual(s) that may have custody, control or possession of the child, shall release the child and place the child in custody, possession and control of Isa N. Skafi and Patricia Skafi on or before 4:00 p.m. August 26, 2002.

The INS declined to release Aldo pursuant to the order of the state court. This

---

2. In its brief filed with the Court on August 21, 2002, Defendants state that "[t]he INS made travel arrangements for Guadarrama because it reasonably believed that she wanted to return to Mexico immediately."

Court conducted a hearing on Plaintiffs' motion for a preliminary injunction on August 27, 2002. Immediately prior to the hearing, Plaintiffs filed a "Statement by Griselda Guadarrama–Garcia, August 26, 2002 and Restatement of Plaintiffs' Position in this Litigation." In her statement, Guadarrama indicated that attorney Peter D. Williamson, not Isaias Torres, would represent her in this matter, and that she desires her child to be placed with Mr. and Mrs. Skafi. Further, Plaintiffs requested that this Court enforce the portion of the state court's August 26, 2002 order that requires Aldo to be released to Mr. and Mrs. Skafi.

Guadarrama was present for the August 27, 2002 hearing and answered questions directed to her by the Court.[3] Counsel for Plaintiffs, counsel for the INS, a representative for the INS District Director, the attorney ad litem for Aldo (appointed in the state court custody proceeding), the attorney ad litem for the unnamed father (appointed in the state court custody proceeding), a representative of the Mexican consulate, and Mr. Torres, who previously filed a motion on Guadarrama's behalf with this Court, were in attendance and participated in the hearing. Counsel for Plaintiffs concede that the prior request for a preliminary injunction is moot.[4] Plaintiffs instead ask this Court to issue an injunction requiring the INS or placement agency in possession of Aldo to turn him over to Mr. and Mrs. Skafi. Plaintiffs further seek an order from the Court allowing Aldo to remain in the United States for an extended period, thus enabling counsel to seek asylum on his behalf.[5] Counsel for Defendants requested a two-week delay for a psychological examination of Guadarrama in relation to her ability to effectively give consent to the adoption. Thus, the Court is faced with determining the status of the mother and child's detention by INS in relationship to its prior order, the order of the state court, and the established procedure of the INS regarding individuals who enter the United States illegally.

This Court recognizes that foreign adoptions are lengthy, complex, emotional, and often frustrating processes, involving legal proceedings in multiple jurisdictions. Added to these burdens are the exorbitant expenses and extensive time that frequently must be expended in legally securing such an adoption. The Court acknowledges the arduous task facing a couple who seeks to adopt a child internationally. However, the Court declines to condone smuggling or other unauthorized entry of a child into the United States to facilitate an adoption. In the instant case, not only did Guadarrama and her son enter the country illegally, but they did so with the assistance of the adoptive parent, who as a result is facing a federal criminal charge. Although the Court has compassion for

3. A court interpreter translated the proceedings for Guadarrama.

4. The Court granted the emergency motion for a temporary restraining order to permit Guadarrama to participate in the state court adoption proceeding, if she so desired. The voluntary departure order of the immigration judge signed on August 9, 2002 would have allowed her to depart the United States on or before September 6, 2002. This date was established to allow her to attend the state court hearing originally scheduled for September 3, 2002. Because the state court hearing was moved to August 26, 2002, the preliminary injunction as initially filed by the Plaintiffs became moot.

5. Plaintiffs' counsel advised the Court that Guadarrama is ready to return to Mexico, but that the child's best interest would be served by the implementation of the state court order to deliver Aldo to Mr. and Mrs. Skafi. Guadarrama stated in her testimony that she now desires to remain in the United States, but even if she must return to Mexico, she wishes for Aldo to be adopted by the Skafis.

Mr. and Mrs. Skafi and those in a similar position seeking to obtain an international adoption, the Court cannot effectuate a precedent that could, in effect, support illegal actions by prospective parents to bring a child into the United States or to attempt to obtain an adoption in the United States without first undergoing the appropriate and necessary legal proceedings in the child's country of origin. Such a precedent could conceivably impact the legal adoption process worldwide and might potentially encourage abuses and exploitation of children. Thus, the Court declines to intervene and disrupt the normal course of INS proceedings.

Notwithstanding the foregoing, this Court notes that the state family court was fully within its own jurisdiction to proceed with the custody issue on the record before it.[6] The state court correctly focused on the best interest of the child based upon the evidence and record before it as a state family court may only deal with the adoption matter brought within its statutory purview. The immigration status of Gua-

darrama and Aldo, however, is a separate and overriding federal issue.[7]

The Court concludes that Plaintiffs have failed to make the requisite showing in the instant case for the issuance of an injunction.[8] Based on the facts and circumstances of this case, the Court declines to interfere with the usual deportation proceedings and extend Aldo's stay in the United States. The instant order, however, is not intended to circumvent relief, if any, that may be obtained directly through the Immigration and Naturalization Service. Accordingly, the Court hereby

ORDERS that Plaintiffs' motion for preliminary injunction is MOOT. The Court further

ORDERS that Plaintiffs' request for this Court to enforce the 309th Family District Court's August 26, 2002 order to release Aldo Guadarrama to Isa and Patricia Skafi is DENIED. This Court's prior Order of August 12, 2002 is vacated and the immigration judge's decision of August 21, 2002 is reinstated.[9] Guadarrama may

---

6. The Court commends State District Judge Frank Rynd and counsel who participated in the state court proceeding on behalf of Isa and Patricia Skafi, Guadarrama, Aldo, and the unnamed father.

7. In the course of deliberations in this case, the Court has been cognizant of the policy to abstain from interference in the realm of a state court's jurisdiction to determine the family law issues. *See Ankenbrandt v. Richards,* 504 U.S. 689, 694, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) (noting that federal district courts rely on the domestic relations exception to abstain from exercising diversity jurisdiction in suits relating to family issues such as divorce, alimony, or custody); *Congleton v. Holy Cross Child Placement Agency, Inc.,* 919 F.2d 1077, 1078 (5th Cir.1990) ("[a]s a general rule, federal courts refuse to hear suits for divorce and alimony, child custody actions, disputes over visitation rights, suits to establish paternity and to obtain child support, and actions to enforce separation or divorce decrees still subject to state modifica-

tion" based on a long-standing policy of abstention in family relations cases).

8. To warrant injunctive relief, the movant must show by a preponderance of the evidence that (1) relief is necessary to prevent irreparable injury; (2) there is a substantial likelihood the movant will succeed on the merits; (3) the threatened injury outweighs the harm an injunction would cause the opposing party; and (4) an injunction is in the public interest. *Rodriguez v. United States,* 66 F.3d 95, 97 (5th Cir.1995).

9. At a hearing before the immigration judge on August 9, 2002, Guadarrama was granted permission to voluntarily depart until September 6, 2002. The order was for voluntary departure under safeguards so long as Guadarrama remained in INS detention. *See* 8 C.F.R. § 240.26(b)(3)(i) (the immigration judge may impose necessary conditions to ensure departure).

On August 21, 2002, at Guadarrama's request, the Immigration Court amended the

be released from INS custody if she posts a $6,000.00 bond. Pursuant to the prior decision of the Immigration and Naturalization Service, Griselda Guadarrama–Garcia and Aldo Guadarrama a/k/a Fabian Guadarrama may voluntarily depart the United States on or before September 6, 2002.[10]

---

August 9, 2002 order to provide that if Guadarrama posts the $6,000.00 bond, the safeguards will be lifted, thereby allowing her to be released from custody during the voluntary departure period. Thus, Guadarrama may be released if she posts a $6,000 bond.

10. Defendants have indicated to the Court that "the INS will not make travel arrangements on [Guadarrama's] behalf until her counsel advises that she is ready to depart or until the alternative order of removal becomes effective."